IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| MAGGIEMOO'S INTERNATIONAL, LLC <br> 10025 Governor Warfield Parkway <br> Suite 301 <br> Columbia, MD 21044 <br><br> Plaintiff <br><br> v. <br><br> MIN PARK <br> 5624 Dogue Run Drive <br> Fairfax Station, VA 22039 <br><br> Defendant. | * <br> * <br> * <br> * <br> * Civil No. <br> * <br> * |

* * * * * * * *

**VERIFIED COMPLAINT FOR PRELIMINARY
AND PERMANENT INJUNCTIVE RELIEF AND OTHER RELIEF**

**INTRODUCTION AND SUMMARY**

1. Plaintiff, MaggieMoo's International, LLC ("MMI"), by its undersigned counsel, sues Defendant Min Park ("Park"), a former franchisee of MMI, whose MaggieMoo's Franchise Agreement ("Franchise Agreement") has just been terminated. (A copy of the Franchise Agreement is **Exhibit 1** hereto.) The termination resulted from Park's repeated and serious uncured defaults of his obligations under the Franchise Agreement. Because Park has advised MMI that he will not willingly honor the termination of his Franchise Agreement, and thus will not willingly honor his de-identification, non-competition and other post-termination obligations to MMI in the Franchise Agreement, MMI is threatened with and will suffer irreparable harm unless he is enjoined and required to honor these obligations. This and other courts have consistently upheld a franchisor's right to protect its trademarks and servicemarks, and have held

224227/3564.1                                                        1

that irreparable harm inevitably follows from a violation of these marks by a former franchisee. Similarly, this and other courts have consistently upheld a franchisor's rights to enforce the ex-franchisee's post-termination non-competition obligations, in order to prevent irreparable harm to the franchisor and its franchise system.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1331, in that this is an action arising under one or more of the laws of the United States of America, and further has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1332, in that this is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

3.     This Court also has jurisdiction over the subject matter of this action under and by virtue of 15 U.S.C. § 1121 and 28 U.S.C. § 1338(b), in that this action presents one or more claims of unfair competition that are joined with one or more substantial and related claims under the trademark laws. This Court also has supplemental jurisdiction over the subject matter of the non-federal claims for relief asserted in this Verified Complaint under and by virtue of 28 U.S.C. § 1367.

4.     Personal jurisdiction and venue are required exclusively in this judicial District by the mandatory and exclusive choice of forum provision in paragraph 24.4 of the Franchise Agreement.

5.     Paragraph 24.2 of the Franchise Agreement expressly provides for litigation to enforce the franchisor's rights concerning its marks and the non-competition obligations.

## THE PARTIES

6. Plaintiff MMI is a Delaware limited liability company with its principal place of business at 10025 Governor Warfield Parkway, Suite 301, Columbia, Maryland 21044. It conducts its business under the names "MaggieMoo's" and "MaggieMoo's Ice Cream and Treatery."

7. MMI was organized and chartered as a Delaware limited liability company on November 1, 1996. On November 25, 1996, it acquired many of the assets of MaggieMoo's Franchise Company, Inc., including existing franchise agreements, trademarks, and proprietary recipes, with the intent of franchising and operating MaggieMoo's ice cream stores under the "MaggieMoo's" name and mark. It began to offer franchises for MaggieMoo stores in August 1997. As of December 31, 2004, it had 141 franchised MaggieMoo's stores in 31 states and the District of Columbia and three company-owned MaggieMoo's stores.

8. MMI owns a distinctive format and system (the "**System**") relating to the establishment and operation of frozen dessert retail businesses, which operate at stores that display its interior and exterior trade dress ("**MaggieMoo's Stores**"), that operate under Proprietary Marks (as defined below), and that are primarily engaged in the sale of certain products. MaggieMoo's Stores sell ice cream, ice cream cakes, milk shakes, sundaes, smoothies, frozen yogurt, frozen desserts, and sorbet (the "**MMI Products**"); toppings, confections, beverages, ice cream cones, bakery items, candy, and other food items, and other complementary and compatible products approved by MMI for sale in MaggieMoo's ice cream stores (the "**Approved Products**"); and non-food items, which may include T-shirts, hats, caps and other apparel, dolls, toys, coffee mugs, glasses and other accessories bearing the Proprietary Marks (defined below) or affiliated with the System and/or MMI (the "**Accessory Products**").

MaggieMoo's Stores feature a chilled counter where MMI Products are blended with and/or served with Approved Products that are selected by the customer. The (MMI Products, the Approved Products, and the Accessory Products are referred to herein as "**Products**.")

9.  The System includes distinctive interior and exterior decor, color scheme, design, and furnishings; specialized menus; proprietary recipes and formulas for food products; uniform standards, specifications, procedures for management and inventory control; training and assistance; and advertising and promotional programs. The System is identified by certain trade names, service marks, trademarks, logos, emblems, and indicia of origin for use in connection with the System including but not limited to "MAGGIEMOO'S" (Federal Registration No. 2208567) and "MAGGIEMOO'S ICE CREAM AND TREATERY and Design" (Federal Registration No. 2282514) (the "**Proprietary Marks**"). MMI has invested over $10 million in development and promotion of its System and its Proprietary Marks.

10. MMI operates and franchises others to operate MaggieMoo's Stores that offer all or substantially all of the MMI Products and the Approved Products, and a representative selection of Accessory Products. MaggieMoo's Stores are usually located in shopping centers, shopping malls and urban locations.

11. Defendant Park is a resident of Virginia. He was the MMI franchisee at the MaggieMoo's store 46-201 in Springfield, Virginia. His Franchise Agreement, dated July 24, 2003, was terminated by MaggieMoo's coincident with the filing of this suit, by reason of his repeated defaults of his basic obligations under the Franchise Agreement and his failures to cure the defaults, notwithstanding that MMI accorded him _more_ opportunities to cure defaults than required by the Franchise Agreement or by MMI's written procedures.

12. Park has advised MMI that he will not willingly honor a termination of his Franchise Agreement.

## THE FRANCHISE AGREEMENT AND PARK'S DEFAULTS AND TERMINATION

13. The Franchise Agreement provides the franchisee the rights and obligations incident to operation of a MaggieMoo's store, under the MaggieMoo's System and the Proprietary Marks. Central to the goodwill and success of the MMI System is the franchisee's observance of the standards required in the Franchise Agreement and MMI manuals.

14. The tool used by MMI to measure brand, service, operational and marketing compliance with its standards is the detailed Service Excellence Evaluation ("SEE") report. It provides the franchisee a comprehensive look at the quality of his or her operation, whether the operation satisfies MMI's standards, and what must be done to improve the franchisee's operations. There are sections involving operations (Service, Service Area, Production Area) and Marketing. Subsections include Exterior Appearance, Hospitality, Food Quality, and Cleanliness. There are several elements in each subsection. A franchisee must achieve only a 70% score to "pass" a SEE inspection, and failure to pass a SEE inspection is a default under the Franchise Agreement. SEE inspections are conducted on a periodic basis, after several days' notice to the franchisee, by the franchisee's MMI "Franchise Business Consultant" ("FBC").

15. The SEE Report was revised in early 2005, partly as a result of the influence of franchisees in good standing who wanted MMI to more fully evaluate franchisees and to take action to protect <u>their</u> System and <u>their</u> investments by terminating franchisees who did not live up to System standards, even after being accorded repeated opportunities to do so by MMI.

16. The Franchise Agreement provides, to the extent relevant here, for termination by MMI without further notice if a franchisee commits a default, but then fails to cure it (Franchise

224227/3564.1                                                5

Agreement, ¶ 15.3), or if a franchisee commits the same default twice in twelve months, even if cured Id., ¶ 15.2.9.). However, MMI's procedures under the SEE program are to provide franchisees with not one but two opportunities to cure failing SEE inspections, and after the third failed SEE Report, termination is effected. Park was accorded <u>three</u> rights to cure, however, and never did. Only after his <u>fourth</u> failed SEE inspection in only eight months was the Franchise Agreement terminated.

17. As recited above, Park failed four consecutive SEE inspections, all in 2005. The last was on July 25. (Copies of his SEE Reports are collected in **Exhibit 2**. They depict a list of failures in every area.) His Franchise Agreement could have been terminated by MMI after his third failure on April 6, 2005, but MMI worked with him for months after that. In fact, on May 19, 2005 (**Exhibit 3** hereto), MMI's Vice President and General Counsel had written Park and told him MMI could terminate his Franchise Agreement, but was giving him one more opportunity to cure. When he failed the SEE inspection in late July, however, MMI had no choice but to terminate. (The Termination letter is **Exhibit 4** hereto.)

## THE POST-TERMINATION OBLIGATIONS

18. The Franchise Agreement, as is the norm in franchising, provides that, upon termination, the former franchisee must cease operating the Store, cease using MMI's Proprietary Marks and disassociate from the System entirely. It also permits MMI to certain assignment options concerning the Store Lease, and option to purchase at fair market value the Store furnishings, equipments, supplier and inventory. (¶¶ 16.1 through 16.10.) It further provides that the ex-franchisee shall honor a post-termination non-competition obligation (¶ 17.3). The covenant is limited to only two years and to an area of only five miles from the former franchise location and from any other existing MMI franchise location.

19. The pertinent provisions relating to this post-term non-compete are:

17.2   Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and confidential information, including, without limitation, information regarding the operational, sales, advertising and promotional methods and techniques of Franchisor and the System. Franchisee covenants that during the term of this Agreement, except as otherwise approved in writing by Franchisor, Franchisee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, or corporation:

\*   \*   \*   \*   \*

17.3.2  Franchisee shall not for a continuous uninterrupted period of two (2) years from the date of: (i) a transfer permitted under Section 14, above; (ii) expiration or termination of this Agreement (regardless of the cause for termination); or (iii) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 17.3; either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, partnership, corporation, or other entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) at the Approved Location; (b) within the Territory; or (c) within an area that is within a radius of five (5) miles from any MaggieMoo's Store.

17.3.3. Franchisee shall not for a continuous uninterrupted period of two (2) years from the date of expiration or termination of this Agreement sublease or assign Franchisee's interest in any lease or sublease for the premises of the Store to a third party for the operation of a Competitive Business.

17.8   Franchisee expressly agrees that the existence of any claims it may have against Franchisor, whether or not arising from this Agreement shall not constitute a defense to the enforcement by Franchisor of the covenants in this Section 17. Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees) incurred by Franchisor in connection with the enforcement of this Section 17....

17.9   Franchisee acknowledges that Franchisee's violation of the terms of this Section 17 would result in irreparable injury to

> Franchisor for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 17.

20. As this and other courts have held, it is essential to a franchise system to protect its proprietary marks from unauthorized use and to enforce its non-compete covenants. Because there is substantial doubt as to whether Park will honor these obligations, MMI is threatened with irreparable harm, necessitating injunctive relief to enforce them. As this and other courts have held, the balance of hardships is very much in MMI's favor, because, while the franchisee must simply abide by the agreement he or she signed, if he or she does not, and violates these post-termination obligations, the franchisor's "System itself ... is at issue" and that a "failure to grant the injunction here might unravel the franchise system." *ATL International, Inc. v. Baradar*, Bus. Fran. Guide (CCH) ¶ 30,335 (D.Md. 1997) (*ATL* is discussed in and attached to the Memorandum of Law) filed herewith; see *Merry Maids LLC v. Kamara*, 33 F.Supp.2d 443, 445 (D.Md. 1998) ("the often painful harm which follows a defendant who willfully breaches a contractual undertaking is not a basis for denying a plaintiff the relief to which it is legally entitled" (discussed also in the Memorandum of Law).

## COUNT I

## BREACH OF CONTRACT

21. MMI incorporates by reference the allegations of paragraph 1-20.

22. Park has threatened to violate his post-termination obligations to MMI in ¶¶ 16.1-16.10 and 17.3.2-17.3.3 of his terminated Franchise Agreement, which require inter alia cessation of his Store operations, cessation of use of MMI's Proprietary Marks and information and Products, observance of the two year non-compete, and cooperation with MMI in its exercise of its rights under his lease and with respect to the Store assets.

23. To prevent irreparable harm to MMI and its System, the Court should enter a preliminary and permanent injunction enforcing MMI's rights above, and MMI should be awarded damages for Park's violations until the date of the entry of the injunction.

## COUNT II

## TRADEMARK INFRINGEMENT

24. MMI incorporates by reference the allegations of paragraph 1-23.

25. Park's continued use of MMI's registered Proprietary Marks after termination of his Franchise Agreement is likely to cause and has caused confusion and mistake and/or has deceived the public and purchasers regarding the source, origin and nature of his products and services. He is attempting to pass off to the public, to his wrongful profit and advantage, imitations of MMI's licensed services. These actions can only serve to confuse the public as to the source of the products and services sold from the Store, all to the detriment of MMI and its national network of MMI franchisees.

26. Park has committed the acts described hereinabove with knowledge and with deliberate intent and design to cause confusion, mistake, to deceive, and to trade on the MMI's Proprietary Marks and valuable goodwill attached thereto.

27. By reason of the foregoing, Park has violated and continues to violate the provisions of the trademark law of the United States, commonly known as the Lanham Act, 15 U.S.C. §1051 et seq., all to MMI's injury. Defendant has willfully infringed the MMI Proprietary Marks in violation of 15 U.S.C. §1114. The harm cannot be fully compensated in monetary damages, and MMI is entitled to preliminary and permanent injunctive relief to enjoin these acts, as provided by 15 U.S.C. § 1116(a). Further, as a consequence of these deliberate and

wrongful acts, MMI also is entitled to an award of Defendant's profits and/or of treble damages as provided by 15 U.S.C. §1117(a).

## COUNT III

### FEDERAL UNFAIR COMPETITION

28.   MMI incorporates paragraphs 1 through 27 as if each were fully set forth herein.

29.   Park has engaged deliberately in false designations of origin, false and misleading descriptions of fact, and false and misleading representations of fact in connection with goods and services, in violation of 15 U.S.C., §§ 1125(a)(1) and (a)(2).

30.   Defendant's willful and unlawful acts have caused, and, unless enjoined, will continue to cause, damage and irreparable harm to MMI, its franchisees, and its franchise System. The harm cannot be fully compensated in monetary damages. A preliminary and permanent injunction pursuant to 15 U.S.C. § 1116 should be entered to enjoin these acts. Further, as a consequence of these deliberate and wrongful acts, MMI also is entitled to an award of Defendant's profits and/or of treble damages as provided by 15 U.S.C. §1117(a).

## COUNT IV

### COMMON LAW UNFAIR COMPETITION

31.   MMI hereby incorporates paragraphs 1 through 30 of the Verified Complaint as if each were fully set forth herein.

32.   Park has committed the tort of unfair competition against MMI, acting unfairly and deceptively, and has acted deliberately, maliciously, and with reckless disregard for MMI's rights and the rights of MMI's franchisees and the public.

32.   MMI has suffered damage and will continue to suffer damage as a result of Defendant's unfair competition. The harm cannot be fully recompensed in monetary damage,

and is irreparable. A preliminary and permanent injunction should be entered to enjoin these acts.

## COUNT V

### BREACH OF CONTRACT (LOST ROYALTIES)

33. MMI hereby incorporates paragraphs 1 through 32 of the Verified Complaint as if each were fully set forth herein.

34. Park was required by Paragraph 4.2 of the Franchise Agreement to pay a monthly royalty to MMI, amounting to 6% of his Store's Adjusted Gross Sales. The Store has been generating royalties at the rate of $18,000 per year, or an average of $1500 per month.

35. By reason of Park's defaults and the termination of the Franchise Agreement, far in advance of the expiration of the ten year term, Park owes to MMI, as part of the benefit of the bargain, royalties for the remaining seven years and eleven months of the term, i.e., $142,500.

## COUNT VI

### ATTORNEY FEES UNDER FRANCHISE AGREEMENT

36. MMI hereby incorporates paragraphs 1 through 35 of the Verified Complaint as if each were fully set forth herein.

37. Paragraphs 16.7 and 17.8 of the Franchise Agreement expressly provide that MMI is entitled to its attorney's fees and costs incurred in enforcing the rights it is enforcing in this Complaint.

38. The Court should grant MMI its attorney's fees and costs.

## PRAYER

WHEREFORE, MMI prays that the Court enter preliminary and permanent injunctions as requested herein and in MMI's Motion for a Preliminary Injunction, filed herewith, enjoining Park

from violating his post-termination obligations to MMI, ordering that MMI may recover its damages, attorney's fees and costs as requested above, and ordering such other relief as may be proper.

August 14, 2005

_____
ALLAN P. HILLMAN
U.S. District Court Bar No. 119
**Neuberger, Quinn, Gielen, Rubin & Gibber, P.A**
One South Street, 27th Floor
Baltimore, MD  21202-3282
(410) 332-8542
aph@nqgrg.com

Attorney for Plaintiff

224227/3564.1                        12

## VERIFICATION OF COMPLAINT UNDER PENALTY OF PERJURY

STATE OF MARYLAND
                    SS:
COUNTY OF HOWARD

Andrew M. Friedman, being first fully sworn, deposes and states under penalty of perjury that he over twenty-one years of age; that he is the Vice-President and General Counsel of MaggieMoo's International, LLC ("MMI"); that, as such, he is authorized to make this oath and verification; that, in his capacity, he is familiar with MMI's business operations, including its business dealings and its relationship with its franchisees generally and with Defendant in particular; that he has read the foregoing Verified Complaint; that he knows the contents thereof to be true of his own personal knowledge; and that, as to the allegations contained in the Verified Complaint which are made upon information and belief, he believes them to be true.

Dated: August 23, 2005

_____
Andrew M. Friedman
Vice President and General Counsel
MaggieMoo's International, LLC
10025 Governor Warfield Parkway
Suite 301
Columbia, MD 21044